**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1704-22

JAMES ANDRIANI,

    Plaintiff-Appellant,

v.

HUDSON COUNTY
SCHOOLS OF TECHNOLOGY,

    Defendant-Respondent.

_____

Submitted January 29, 2024 – Decided February 7, 2024

Before Judges Sabatino, Mawla, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3335-22.

The Toscano Law Firm, LLC, attorneys for appellant (Patrick P. Toscano, Jr, of counsel and on the briefs; Matthew J. Toscano, on the briefs).

Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC, attorneys for respondent (Michael A. Pattanite Jr., of counsel and on the brief).

PER CURIAM

Plaintiff James Andriani, a former administrator employed by defendant Hudson County Schools of Technology ("HCST"), appeals the trial court's February 10, 2023 dismissal of his constructive discharge lawsuit. The court concluded that plaintiff filed his complaint after the applicable statutes of limitations had expired. We agree with the court's application of the time bar, and consequently affirm.

We briefly summarize the factual background, the details of which are well known to the parties. The HCST has a program known as "accelerated retirement" or "terminal leave." The program enables eligible employees nearing retirement age to stop working and enter a path to full retirement.

Plaintiff chose to take terminal leave in December 2019. He alleges that, starting in early 2019, he was wrongfully pressured to do so by the HCST business administrator, in violation of the Law Against Discrimination, N.J.S.A. 10:5-1 to -50 ("LAD"), and the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14 ("CEPA"). Plaintiff further alleges his work environment leading up to December 2019 had become hostile for discriminatory and retaliatory reasons. The HCST kept open plaintiff's position for about a year, when the HCST eventually filled it by promoting a younger person.

A-1704-22

Plaintiff filed his complaint in the Law Division in October 2022, two years and ten months after he had begun his terminal leave in December 2019. The HCST moved to dismiss the complaint for failure to state a viable claim within the statutes of limitations. Plaintiff argued to the trial court, as he does here, that his causes of action did not accrue until October 1, 2022, when his terminal leave ended, and he formally retired from his employment.

The legal principles that guide our analysis are well established. We review the trial court's application of those principles de novo. Save Camden Pub. Schs. v. Camden City Bd. of Educ., 454 N.J. Super. 478, 487 (App. Div. 2018) (noting that "whether a cause of action is barred by a statute of limitations is a question of law that we review de novo").

The LAD prohibits unlawful discrimination by employers because of an individual's age, among other protected categories. N.J.S.A. 10:5-12. The statute of limitations for a LAD claim is two years. Montells v. Haynes, 133 N.J. 282, 292-96 (1993). Claims under the LAD filed more than two years after the alleged discriminatory actions are to be dismissed. Roa v. Roa, 200 N.J. 555, 566 (2010).

"Determining when the limitation period begins to run depends on when the cause of action accrued, which in turn is affected by the type of conduct a

plaintiff alleges to have violated the LAD." Alexander v. Seton Hall Univ., 204 N.J. 219, 228 (2010). Generally, a discrete act of discrimination or retaliation is readily determined as "occur[ing] on the day that it 'happen[s].'" Roa, 200 N.J. at 567 (second alteration in original) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002)). "[W]hen the complained-of conduct constitutes 'a series of separate acts that collectively constitute one unlawful employment practice[,]' the entire claim may be timely if filed within two years of 'the date on which the last component act occurred.'" Alexander, 204 N.J. at 229 (second alteration in original) (quoting Roa, 200 N.J. at 567).

In the present case, plaintiff claims he was forced to take terminal leave in December 2019 because of coercive and discriminatory conduct by his employer. Because he was not actually terminated at that time, his claim represents a claim of constructive discharge.

Constructive discharge under the LAD generally "occurs when an 'employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 27-28 (2002) (quoting Muench v. Twp. of Haddon, 255 N.J. Super. 288, 302 (App. Div. 1992) (internal citations omitted)). See also Donelson v. DuPont Chambers Works, 206 N.J. 243, 257

4

(2011) (citing Shepherd, 174 N.J. at 28).

Similar principles apply to plaintiff's claims under CEPA. The statute of limitations under CEPA is shorter than under the LAD. A complainant must bring a claim under CEPA with one year of the alleged retaliatory employment action. N.J.S.A. 34:19-5. If a claim stems from a wrongful actual termination, the "employee's cause of action under CEPA accrues on the date of actual discharge." Alderiso v. Med. Ctr. of Ocean Cnty. Inc., 167 N.J. 191, 194 (2001). "[I]n an actual termination situation, the retaliatory action which starts the running of the period of limitations is the separation from work." Daniels v. Mutual Life Ins. Co., 340 N.J. Super. 11, 17 (App. Div. 2001).

By comparison, a constructive discharge under CEPA "occurs when the employer has imposed upon an employee working conditions 'so intolerable that a reasonable person subject to them would resign.'" Ibid. (quoting Muench, 255 N.J. Super. at 302). "In a constructive discharge situation, the retaliatory action is the creation of intolerable conditions which a reasonable employee cannot accept." Id. at 17-18. The critical date of accrual is the date on which the plaintiff felt compelled to stop working. Id. at 17. "The harm has been done when the employee feels compelled to resign." Ibid.

Plaintiff's pleadings make clear that the day he felt forced to take terminal

A-1704-22

leave was the day his retirement path began, and the day he no longer intended to work for HCST. He theorizes that he could have changed his mind about retirement during his terminal leave. However, that possibility never materialized. Moreover, defendant's allegedly coercive and unlawful conduct that compelled plaintiff to go on terminal leave occurred on or before December 1, 2019.

We reject plaintiff's alternative contention that, at the very earliest, his cause of action did not accrue until about a year after his December 2019 departure, when the HCST filled his position with a younger employee. That argument fails. The "component acts" of coercion the HCST allegedly exerted upon plaintiff had already occurred. Alexander, 204 N.J. at 229.

If, hypothetically, the date of a replacement hire was deemed the pivotal event for purposes of accrual, plaintiffs with viable claims could wait for years before they brought suit under the LAD and CEPA. In the meantime, evidence might dissipate, memories might fade, and an employer would be uncertain about whether it would face litigation. Such delays would conflict with policies enacted by the Legislature and enforced by our courts.

Statutes of limitations serve at least three important policy interests. The first is to instill in society a "measure of repose." Caravaggio v. D'Agostini, 166

N.J. 237, 245 (2001) (quoting Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 115 (1973)); see also Smith v. Datla, 451 N.J. Super. 82, 92-93 (App. Div. 2017).  The Supreme Court has recognized this as the primary benefit of statutes of limitations, finding that "eventual repose creates desirable security and stability in human affairs."  Galligan v. Westfield Centre Serv., Inc., 82 N.J. 188, 191-92 (1980); see also Schmidt v. Celgene Corp., 425 N.J. Super. 600, 611-12 (App. Div. 2012) (quoting same passage).

Second, statutes of limitations encourage the prompt settlement of disputes, so that potential litigants do not sit on their rights.  "By penalizing unreasonable delay, such statutes induce litigants to pursue their claims diligently so that answering parties will have a fair opportunity to defend."  Galligan, 82 N.J. at 192 (citations omitted); see also Schmidt, 425 N.J. Super. at 611-12.

Third, statutes of limitations help assure that judges and juries do not have to adjudicate "stale claims."  Mitzner v. W. Ridgelawn Inc., 311 N.J. Super. 233, 236 (App. Div. 1998); see also Smith, 451 N.J. Super. at 92.

Each of those policies would be undermined by adopting plaintiff's argument that his causes of action did not accrue until years after December 1, 2019.  The trial court justifiably rejected that argument.

7

In sum, plaintiff's deadline to file a CEPA claim expired on December 1, 2020, and his deadline to file an LAD claim expired on December 1, 2021. His complaint filed in October 2022 was manifestly too late.

To the extent that we have not discussed them here, plaintiff's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1704-22