**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2472-17T1

ADEL MANSOUR,

      Plaintiff-Appellant,

v.

BROOKLAKE CLUB
CORPORATION, INC. (d/b/a
Brooklake Country Club),

      Defendant-Respondent.

_____

Argued December 13, 2018 – Decided July 10, 2019

Before Judges Simonelli, O'Connor and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-4008-15.

Edward W. Schroll argued the cause for appellant (Castronovo & McKinney, LLC, attorneys; Paul Castronovo and Edward W. Schroll, of counsel and on the briefs).

Domenick Carmagnola argued the cause for respondent (Carmagnola & Ritardi, LLC, attorneys; Domenick Carmagnola, of counsel and on the brief; Anthony Vinhal, on the brief).

PER CURIAM

In this employment matter, plaintiff Adel Mansour appeals from the December 1, 2017 Law Division order granting summary judgment to defendant Brooklake Club Corporation, Inc. and dismissing plaintiff's claim of hostile work environment under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. The trial court found plaintiff's claims were barred by the two-year statute of limitations, N.J.S.A. 2A:14-2(a), and did not fall within the continuing violation doctrine. We reverse and remand.

I.

We derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff. Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017).

Defendant employed plaintiff as a cook from 2003 to December 31, 2016. Plaintiff filed a complaint on November 18, 2015, alleging he was harassed throughout his employment because he is Egyptian and Muslim. He asserted that on June 10, 2012, his supervisor printed an article about former Egyptian President Hosni Mubarak entitled "Former Egypt President Mubarak in Critical Condition," which included a photograph of Mubarak in a jail cell. The

supervisor posted the photograph and asked plaintiff to "call the Muslim Brotherhood and ask them, 'What are they going to do with Mubarak? Hang him or cut his head off?'" The supervisor frequently asked plaintiff about the Muslim Brotherhood, which plaintiff considered a terrorist group, and asked whether plaintiff knew anybody in that group. The supervisor admitted asking plaintiff about the Muslim Brotherhood and stated that he and plaintiff "would have conversations all the time about stuff like that."

Defendant's general manager saw the photograph of Mubarak on the refrigerator, but did not remove it. The article hung on the refrigerator next to the supervisor's office for about one week before plaintiff took it down. Plaintiff admitted the article did not say anything offensive about Egyptians, but he was nevertheless offended by it being hung and by "somebody making [a] comment every day about it." He was also offended by his supervisor asking him about the Muslim Brotherhood "many times" because it insinuated he knew people related to a terrorist group. Plaintiff told his supervisor to stop because it was offensive. Plaintiff's wife testified at her deposition that plaintiff was very upset about the picture of Mubarak being posted in the workplace because he felt the supervisor's actions were "targeted at him" and "he [was] singled out."

3

In March 2014, when Malaysia Airlines flight 370 disappeared, plaintiff's supervisor and another employee joked in plaintiff's presence about the pilot being Egyptian. The supervisor admitted "we all kind of chuckled and [plaintiff] walked out of the office." Following the exchange, the employee hung a large world map in the kitchen and wrote on it, "Adel, where is it?" referring to the lost plane. While plaintiff was prepping food, he was called to the kitchen where the staff was eating dinner and the supervisor and employee asked him, "Where's the plane? Where is the plane, Adel? Anybody told you where is the plane?" The supervisor heard "joking about it afterwards" and defendant's general manager heard about the incident.

Plaintiff asserted several more incidents of harassment without specifying exactly when they occurred. For example, before his supervisor left for a ballgame in New York City, he said to plaintiff, "Hey Adel, do you know if anyone is going to get bombed today?" and "Adel, can you call somebody, see if there is any bombing in the train, in the subway, and it's safe or not? Could you call somebody?" Plaintiff understood this comment to be making fun of him by relating him to terrorists. Plaintiff said his supervisor made this comment before the article about Mubarak was hung in June 2012.

A-2472-17T1

Plaintiff's supervisor also connected him to terrorists by telling him he was "one of the sleep[er] cells," and warned other staff members about talking to plaintiff because there had been a recent news story about terrorist sleeper cells. Plaintiff could not recall when his supervisor made this comment, but claimed "[i]t [was] something going and going all the time. Something every couple days, couple days something comes up."

Plaintiff's supervisor texted him the phrases "Inshallah" and "Allah Akbar," which are commonly known to be chanted by terrorists. Plaintiff explained it was offensive for a non-Muslim to use those words towards him because it insinuated he was a terrorist. Plaintiff confronted his supervisor about the texts and asked him to stop. The supervisor admitted to texting these phrases to plaintiff "once in a while[,]" but said he did not associate them with terrorism and did not believe they were terrorist chants.

Plaintiff's supervisor referred to him as "that mother fucker Egyptian," in response to a waitress's question regarding who had prepared a salad that plaintiff made. Plaintiff told his supervisor, "I don't like you call me these names."

Lastly, during the course of his employment, plaintiff's supervisor criticized him for not eating pork and made reference to the fact that Muslims

do not eat pork. Every time plaintiff cooked pork or when pork was on the menu, his supervisor would say to him in the presence of others, "So delicious . . . you Muslims don't know what you're missing." On many occasions, the supervisor came to plaintiff with a piece of pork and said, "would you like a piece of devil's meat?" Plaintiff found these comments offensive, believed his supervisor intended to offend him by making them, and asked him to stop. The supervisor admitted he asked plaintiff if he wanted "devil meat" and said to plaintiff, "it was really good," "you don't know what you're missing." Although plaintiff could not recall the last time his supervisor made these comments, he testified at his deposition they were made "many times," and "it's something keep going. It's all the time." The supervisor ceased making the pork comments after plaintiff filed his complaint on November 18, 2015.

The court found plaintiff's hostile work environment claim was untimely because the majority of the alleged discriminatory acts occurred outside the statute of limitations and count not be deemed timely under the continuing violation doctrine. The court explained:

> In order for the plaintiff . . . to defeat the [SOL] as being tolled it must be continuous cumulative pattern of tortious conduct. . . . . In this particular case the -- the majority of the alleged inappropriate statements and events occurred between 2003 and 2012. Then there was a break for a whole year. And then there was one

A-2472-17T1

isolated incident that occurred in 2014. And after that, nothing was alleged to have occurred between March of 2014 and November of 2015, almost a year and a half later. The acts have to be continuous and cumulative and show a pattern of tortious conduct to defeat the statute of limitation.

And in this particular case, the [c]ourt finds that the alleged incident[s] which constitute the bulk of the plaintiff's claims occurred between 2003 and 2012. The [court] finds that those particular incidents are time . . . barred.

The court also found the world map incident in March 2014 was "not severe or pervasive enough which would lead a reasonable person to believe that [plaintiff's] conditions of employment [were] altered which created a hostile or abusive work environment." The judge did not address the pork comments or any other acts of harassment plaintiff had alleged.

II.

Plaintiff argues the court erred in finding his LAD claim was time-barred, misapplied the continuing violation doctrine, and failed to recognize the cumulative pattern of ongoing harassment he suffered directly related to his religion and nationality. We agree.

We review [a] motion for summary judgment using the same standard applied by the trial court— whether, after reviewing "the competent evidential materials submitted by the parties" in the light most favorable to [the non-moving party], "there are genuine

A-2472-17T1

issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law."

> [Grande v. Saint Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).]

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Ibid. (quoting Bhagat, 217 N.J. at 38). Applying this standard, we are compelled to reverse.

The statute of limitations for LAD claims is two years. Alexander v. Seton Hall Univ., 204 N.J. 219, 228 (2010). "Determining when the limitation period begins to run depends on when the cause of action accrued, which in turn is affected by the type of conduct a plaintiff alleges to have violated the LAD." Ibid. Here, plaintiff alleges harassment and hostile work environment.

"Generally stated, discrete acts of discrimination, such as termination or a punitive retaliatory act, are usually readily known when they occur and thus easily identified in respect of timing." Ibid. "Hence, their treatment for timeliness purposes is straightforward: 'A discrete retaliatory or discriminatory act occurs on the day that it happens.'" Ibid. (quoting Roa v. Roa, 200 N.J. 555,

567 (2010)). "Discriminatory termination and other similar abrupt, singular adverse employment actions that are attributable to invidious discrimination, prohibited by the LAD, generally are immediately known injuries, whose two-year statute of limitations period commences on the day they occur." Ibid. Discrete acts are those "such as termination, failure to promote, denial of transfer, or refusal to hire" and for purposes of a statute of limitations, occur on the day they happen. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).

Alternatively, a plaintiff may have a viable LAD claim under the continuing violation doctrine, which is "a judicially created doctrine . . . [that] has developed as an equitable exception to the statute of limitations" in LAD cases. Bolinger v. Bell Atl., 330 N.J. Super. 300, 306 (App. Div. 2000). The continuing violation doctrine provides that "when the complained-of conduct constitutes 'a series of separate acts that collectively constitute one unlawful employment practice[,]' the entire claim may be timely if filed within two years of 'the date on which the last component act occurred.'" Alexander, 204 N.J. at 229 (alteration in original) (quoting Roa, 200 N.J. at 567). "The 'continuing violation' doctrine, recognized under federal Title VII law as an appropriate equitable exception to the strict application of a statute of limitations, provided

the analytic framework that has been used in the assessment of a LAD hostile workplace environment claim."  Ibid.

Our Supreme Court has "specifically adopted the federal continuing violation equitable doctrine to determine the accrual date of a cause of action in a hostile workplace course-of-conduct claim."  Ibid.  The Court noted that the doctrine addresses the "factual circumstances of an ongoing workplace harassment claim that involve[s] alleged incidents of both discrete and non-discrete acts of discriminatory workplace hostility."  Ibid.  The Court stated that "Morgan had clarified the distinction between discrete acts of discrimination and hostile work environment claims, stating that hostile work environment claims by '[t]heir very nature involve[] repeated conduct' of varying types and that '[s]uch claims are based on the cumulative effect of individual acts.'"  Ibid. (alterations in original) (quoting Morgan, 536 U.S. at 115).  The Court also stated that

> [r]ecognizing the beneficial effect of adopting Morgan's approach to such difficult hostile work environment scenarios where an employee may be subjected to ongoing indignities, we held in Shepherd . . . that "a victim's knowledge of a claim is insufficient to start the limitations clock so long as the defendant continues the series of non-discrete acts on which the claim as a whole is based."

A-2472-17T1

[Id. at 229-30 (quoting Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 22 (2002)).]

The Court continued, "[s]tated differently, knowledge of hostility and of ongoing acts consistent with that hostility in such a setting is insufficient to trigger the limitation timeframe within which a LAD cause of action must be filed." Id. at 230. The Court warned, however, "that '[w]hat the doctrine does not permit is the aggregation of discrete discriminatory acts for the purposes of reviving an untimely act of discrimination that the victim knew or should have known was actionable.'" Ibid. (alteration in original) (quoting Roa, 200 N.J. at 569).

To establish a continuing violation based on a series of discriminatory acts, our Supreme Court has stated that two questions must be considered:

> First, have plaintiffs alleged one or more discrete acts of discriminatory conduct by defendants? If yes, then their cause of action would have accrued on the day on which those individual acts occurred. Second, have plaintiffs alleged a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment? If yes, then their cause of action would have accrued on the date on which the last act occurred, notwithstanding "that some of the component acts of the hostile work environment [have fallen] outside the statutory time period."
>
> [Shepherd, 174 N.J. at 21 (alteration in original) (emphasis added) (quoting Morgan, 536 U.S. at 117).]

11

Plaintiff relies on the continuing violation doctrine to sweep in as timely all of the harassment and hostile work environment acts that allegedly occurred during a thirteen-year period. Plaintiff's evidence suggests that from 2003 to the time he filed his complaint in November 2015, he was subjected to a pattern or series of non-discrete acts which, when viewed cumulatively, could constitute a hostile work environment. According to plaintiff, the pork comments, which the court ignored, occurred throughout the course of his employment every time he cooked pork or pork was on the menu and continued until he filed his complaint. In addition, plaintiff's supervisor's comments about plaintiff being one of the sleeper cells "was something going on all the time. Something every couple of days, couple of days something comes up." When a plaintiff alleges a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment, the cause of action accrues on the date of the last act, even if some of the component acts of the hostile work environment claim fell outside the two-year period. Roa, 200 N.J. at 568 (quoting Shepherd, 174 N.J. at 21).

Further, it was undisputed that the world map incident occurred in March 2014, within the statute of limitations period. In finding this was an isolated incident, the court failed to recognize that "[s]o long . . . as one 'act contributing

to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" All. for Disabled in Action, Inc. v. Renaissance Enters., Inc., 371 N.J. Super. 409, 419 (App. Div. 2004) (quoting Morgan, 536 U.S. at 117). Accordingly, plaintiff's hostile work environment claim was timely as a continuing violation.

III.

Plaintiff next contends the court erred in finding plaintiff failed to show the world map incident was severe or pervasive enough to make a reasonable person believe the conditions of employment were altered and the working environment was hostile or abusive.

The burden of proving discrimination "remains with the employee at all times." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005). To establish a cause of action under the LAD based on hostile work environment, the plaintiff must satisfy four elements:

> Specifically, [plaintiff] must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive. Within that framework, a court cannot determine what is "severe or pervasive" conduct

13

without considering whether a reasonable person would believe that the conditions of employment have been altered and that the working environment is hostile. Thus, the second, third, and fourth prongs are, to some degree, interdependent.

[Shepherd, 174 N.J. at 24 (citations omitted).]

A supervisor's rude and uncivil behavior does not qualify as a hostile environment, Shepherd, 174 N.J. at 25, and generally offensive comments are insufficient to establish a hostile work environment. El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 179 (App. Div. 2005). However, a single comment, if sufficiently severe, "can, under particular circumstances, create a hostile work environment." Taylor v. Metzger, 152 N.J. 490, 501 (1998).

In determining whether conduct was severe or pervasive, the harassing conduct as a whole must be evaluated, not its effect on the plaintiff or the work environment. Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 196-97 (2008). "[N]either a 'plaintiff's subjective response' to the harassment, nor a defendant's subjective intent," controls whether a hostile work environment exists. Cutler v. Dorn, 196 N.J. 419, 431 (2008) (citations omitted) (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 613 (1993)). When determining whether the conduct would cause a reasonable person to believe the work environment is hostile, the courts must consider the cumulative effect of the

conduct, not just the isolated instances of conduct. Godfrey, 196 N.J. at 196-97. This requires an assessment of the totality of the circumstances, in which the court should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Cutler, 196 N.J. at 432 (quoting Green v. Jersey City Bd. of Educ., 177 N.J. 434, 447 (2003)).

Here, the court did not consider the totality of the circumstances but focused solely on the world map incident. Viewing all of the evidence presented in the light most favorable to plaintiff, we are satisfied a rational factfinder could reasonably determine the complained-of conduct was sufficiently severe or pervasive, and that a reasonable person of Egyptian ethnicity and who is a Muslim would believe the conditions of employment had been altered and the working environment was hostile or abusive. Accordingly, we reverse the grant of summary judgment and remand to the trial court for further proceedings.

We decline to address defendant's contention that it was entitled to summary judgment because it would have succeeded in asserting an affirmative defense under Aguas v. State, 220 N.J. 494 (2015). Defendant is not precluded

from filing a motion on this issue.  We express no view as to the merits of such a motion.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16