NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2477-24

SHERRI A. AFFRUNTI,

    Plaintiff-Appellant,

v.

REED SMITH LLP,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

November 20, 2025

APPELLATE DIVISION

Argued October 7, 2025 – Decided November 20, 2025

Before Judges Sumners, Susswein, and Chase.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2297-20.

Sherri A. Affrunti, appellant, argued the cause pro se.

Sean P. Joyce argued the cause for respondent (Carmagnola & Ritardi, LLC, attorneys; Sean P. Joyce, of counsel and on the brief; Casey L. Murphy, on the brief).

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

Plaintiff Sherri A. Affrunti filed a Law Division complaint seeking compensation claims against her former employer, defendant Reed Smith, LLP, under provisions of the Diane B. Allen Equal Pay Act (Allen Act or statute), L. 2018, c. 9 (codified as amended in various sections of N.J.S.A.), the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, and the New Jersey Wage Payment Act (WPA), N.J.S.A. 34:11-4.1 to -4.14. On leave to appeal, Affrunti raises issues of first impression under the Allen Act arising from the motion court's omnibus order.

The first issue concerns the scope of damages resulting from the Allen Act's expansion of the lookback period for claims under the LAD and WPA from two years to six years. The motion court, citing the two-part test to determine whether a statute is applied retroactively or prospectively set forth in our Supreme Court's recent decision in Maia v. IEW Constr. Grp., 257 N.J. 330 (2024), applied the statute prospectively; thus, its order limited Affrunti's damages to the period from July 1, 2018 (the Allen Act's effective date) to January 11, 2019 (the date her employment ended with Reed Smith).

We agree with the motion court that, based on Maia, the Allen Act should be applied prospectively. We nonetheless conclude the court incorrectly applied this prospective approach in its order. The Allen Act's six-year lookback period applies to claims arising after its effective date but does not

eliminate the prior two-year lookback period under the LAD and WPA that existed prior to the statute. Applying the LAD's two-year lookback period, Affrunti should be allowed to pursue damages from December 18, 2020 (the date she filed her complaint) to December 18, 2018—not July 1, 2018 to January 11, 2019, as the motion court held. We do not review claims of continuing violations occurring prior to December 18, 2018.

The second issue on appeal is whether the discovery of comparator employee compensation data authorized under the Allen Act should be limited to July 1, 2018 through January 11, 2019 due to the motion court's prospective application of the statute. We conclude the motion court erred in limiting discovery to this time period. We determine that the discovery period should be from December 18, 2018 to December 18, 2020, corresponding to the two-year lookback period. Any expansion of the period based on continuing violations is not reviewed in this appeal.

The third issue on appeal is whether the Allen Act's provision that "[c]omparison of wage rates shall be based on wage rates in all of an employer's operations or facilities" should be interpreted to apply to all of an employer's operations, whether in-state or nationwide. We conclude the court erred in limiting comparator employee compensation data to Reed Smith's New Jersey office. The Allen Act's text, legislative history, and relevant

agency interpretations support broad discovery of the comparator employee compensation data provision, thus permitting Affrunti to obtain Reed Smith's national comparator data.

The fourth issue on appeal is whether the discovery of comparator employee compensation data should cover January 1, 2006 (the approximate date Reed Smith promoted Affrunti to Non-Equity/Fixed Shared Partner (FSP)) to January 11, 2019.  We conclude the court erred in restricting discovery to July 1, 2018 through January 11, 2019.  Affrunti is entitled to discovery from January 1, 2006 to January 11, 2019, as she is permitted broad discovery of national comparator employee compensation data.

I.

A.

Affrunti began her employment as an associate attorney with Reed Smith in 2002.  Reed Smith is headquartered in Pennsylvania with thirty-two offices worldwide, eighteen of which are in the United States.  Affrunti was promoted to FSP on or about January 1, 2006.  She worked primarily in the Princeton office but also had an office in Philadelphia and regularly worked in New York.

On January 11, 2019, Affrunti resigned from her employment as an FSP with the firm contending gender discrimination in being "dramatically

underpaid . . . compared to male FSPs who performed substantially similar work." She received her last two paychecks on January 25, 2019 and March 16, 2019.

B.

On December 18, 2020, Affrunti filed a Law Division complaint[1] against Reed Smith, alleging disparate pay in violation of the EPA, gender discrimination in violation of the LAD, and violation of the WPA.[2] The parties consented to a protective order requiring confidentiality of discovery.

In February 2023, a case management order required Reed Smith to produce comparator employee compensation data for FSPs in its Princeton office from January 1, 2013 through December 31, 2018. Six months later, another case management order extended discovery and preserved Affrunti's right to "re-file her application to compel production of all comparator employee compensation discovery."

In July and August of 2024, the parties filed multiple motions concerning the limits of discovery and damages. On November 24, the court

---

[1] Affrunti was initially represented by counsel but represented herself as of July 17, 2024.

[2] The parties and the motion court interchangeably refer to the WPA and the Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.14. For consistency, we refer only to the WPA.

A-2477-24

entered a four-part omnibus order, granting Reed Smith's motions and denying Affrunti's motion and cross-motion.

We summarize the court's reasoning as set forth in its statement of reasons. First, the court granted "[Reed Smith's] motion to limit [Affrunti's] damages, narrowing [Affrunti's] discovery of comparator employee compensation information to the time of the effective date of the [Allen Act], through [Affrunti's] departure from the firm, from July 1, 2018, to January 11, 2019." The court barred discovery beyond the Allen Act's effective date because it determined that under the two-part test applied by the Supreme Court applied in Maia, 257 N.J. at 349, "the [Allen Act] is to be applied prospectively, and thus the [six-year] lookback period can only extend" as far back as the statute's effective date. Regarding the first part of the test—whether the Legislature explicitly or implicitly intended the statute to be retroactive, ibid. (citation omitted), the court decided there was no clear legislative intent for retroactivity given the statute stated, "'[it] shall take effect on July 1, 2018,'" L. 2018, c. 9 § 6. The Court maintained that stating an effective date has long been construed to mean that a statute is prospective because it "bespeak[s] an intent contrary to, and not supportive of, retroactive application." Maia, 257 N.J. at 352 (internal quotations and citations omitted). The court found the Allen Act was not ameliorative or curative because it

A-2477-24

added substantive rights. The court also ruled that nothing signaled either party had a reasonable expectation that the Allen Act would be applied retroactively. Apparently, because the court determined the first part of the test was not met and both parts must be satisfied to apply a statute retroactively, see id. at 349-50, the court did not address the second part of the test—"whether retroactive application will result in either an unconstitutional interference with vested rights or a manifest injustice," id. at 349.

Second, the court granted "[Reed Smith's] motion for a protective order, limiting the scope of comparator [employee compensation] discovery to a discrete time period between the effective date of the [Allen Act], through [Affrunti's] departure from the firm, from July 1, 2018[] to January 11, 2019." The court reasoned that because "the [statute] is to be applied prospectively, it follows that alleged damages should also comport with the same temporal limitation." Therefore, it limited Affrunti's damages to the period between the Allen Act's effective date and her resignation.

Third, the court denied "[Affrunti's] [m]otion to compel discovery, seeking the production of comparator discovery for the total compensation of all partners classified as [an FSP] throughout the United States from July 1, 2018, to January 11, 2019." The court did not allow Affrunti to expand her discovery request to include comparator information of Reed Smith's FSPs

7

located outside of New Jersey to pursue LAD and Allen Act claims. The court noted the Allen Act "is unclear as to whether the Legislature intended for the operations or facilities to include those either only in New Jersey, worldwide, or both, if the employer is New Jersey-based." Recognizing Reed Smith is incorporated in Delaware and headquartered in Pennsylvania, the court found that the Allen Act, and thus the LAD, should not extend beyond New Jersey even though the statute says "[c]omparison of wage rates [for the purpose of unequal pay for substantially similar work claims] shall be based on wage rates in all of an employer's operations or facilities." N.J.S.A. 10:5-12(t).

The court limited discovery to Reed Smith's New Jersey operations by looking to "extrinsic evidence [which] can be used to interpret the statute." It determined that based on <u>Calabotta v. Phibro Animal Health</u>, 460 N.J. Super. 38 (App. Div. 2019), the LAD applies to out-of-state residents if the discriminating act happened in New Jersey or if the parties expect New Jersey law to apply. The court also relied on LAD enforcement guidelines by the New Jersey Division on Civil Rights and the New Jersey Office of the Attorney General which conclude that the "LAD applies to both New Jersey employees and out-of-state remote employees alike, <u>when the employer is based in New Jersey</u>." The court reasoned that because "the LAD does not apply to out-of-state employers, and because there is no nexus between

A-2477-24

[Affrunti's LAD claim] . . . and the out-of-state employers for which [she] seeks comparator data, [her] [m]otion to compel discovery is [denied]."

Fourth, the court denied "[Affrunti's] [c]ross-[m]otion to compel discovery seeking the production of comparator discovery for the total compensation of all partners classified as [FSPs] throughout the United States from January 1, 2006[] to January 11, 2019." The court prevented Affrunti from obtaining discovery back to the date she became an FSP with Reed Smith for the same reasons it limited her discovery to the Allen Act's effective date.

We denied plaintiff's motion for leave to appeal all issues in the omnibus order. Affrunti v. Reed Smith LLP, No. AM-0199-24 (App. Div. Jan. 7, 2025). However, our Supreme Court granted her leave to appeal and remanded the matter back to us to decide. Affrunti v. Reed Smith LLP, 260 N.J. 324 (2025).

## II.

The Allen Act was enacted to "strengthen[] protections against employment discrimination and promote equal pay for all groups protected from discrimination by the [LAD]." Assemb. Appropriations Comm. Statement to A. 1 (Mar. 22, 2018). Relevant to this appeal are significant changes regarding the recovery of back wages. The Allen Act provides:

> In addition to any other relief authorized by the [LAD]
> . . . for discrimination in compensation or in the

financial terms or conditions of employment, liability shall accrue and <u>an aggrieved person may obtain relief for back pay for the entire period of time, except not more than six years</u>, in which the violation with regard to discrimination in compensation or in the financial terms or conditions of employment has been continuous, if the violation continues to occur within the statute of limitations.

Nothing in this subsection shall prohibit the application of the doctrine of "continuing violation"[3] or the "discovery" rule to any appropriate claim as those doctrines currently exist in New Jersey common law.

[N.J.S.A. 10:5-12(a) (emphasis added).]

This change expanded the de facto two-year lookback period to six years. <u>See Alexander v. Seton Hall University</u>, 204 N.J. 219, 235 (2010). It also applies to the previously established prohibitions on compensation discrimination. Another relevant change was the addition of N.J.S.A. 10:5-12(t), which prohibits employers from paying protected class employees less than non-protected class employees doing substantially similar work.

---

[3] This judicially created doctrine applies to "causes of action arising under anti-discrimination laws, . . . [which has been] developed as an equitable exception to the statute of limitations." <u>Bolinger v. Bell Atl.</u>, 330 N.J. Super 300, 306 (App. Div. 2000). When a "continual, cumulative pattern of tortious conduct [exists], the statute of limitations does not begin to run until the wrongful action ceases." <u>Wilson v. Wal-Mart Stores</u>, 158 N.J. 263, 272 (1999).

III.

We first address Affrunti's contention that the motion court erred in not applying the Allen Act retroactively, thus limiting the scope of her damages and the extent of discovery to the Allen Act's effective date. She contends "the . . . court properly recognized the jurisprudence of . . . [our state's] two-part test for determining retroactive statutory application," but mistakenly found "the test was not met simply because . . . the statute promulgated an effective date [of] . . . July 1, 2018." She posits the statute's six-year lookback period and any further period of continuing violations should be applied retroactively allowing her to seek damages and discovery six years before she received her last paycheck on March 26, 2019.

A.

Our review of whether the Allen Act applies retroactively or prospectively is de novo because it involves an issue of statutory interpretation. Anselmi & DeCicco, Inc. v. J. Fletcher Creamer & Son, Inc., 480 N.J. Super. 454, 462 (App. Div. 2025).

Our Supreme Court's decision in Maia is instructive because it dealt with a similar issue concerning the then-recently enacted amendment to the WPL and WHL, which extended the "WHL's statute of limitations from two to six years." 257 N.J. at 337 (citing L. 2019, c. 212 (Chapter 212)). Chapter 212

11

took "effect immediately" on August 6, 2019. Id. at 347. In Maia, some of the plaintiffs' claims accrued prior to the effective date of the amendment and relied on its new remedies. Ibid. The high Court held that the WPL and WHL must be applied prospectively to conduct that occurred on or after its effective date. Id. at 351.

The Court held that because Chapter 212 "allows [the] plaintiffs to bring new claims with enhanced damages that were not previously available to [them] at the time their injuries occurred, thereby changing the 'legal consequences of [the defendant's] acts,'" applying the amendments to conduct "completed before its enactment" would therefore be retroactive application. Id. at 347 (internal quotations and citations omitted). The Court did not apply Chapter 212 retroactively based on its application of the noted two-part test. Id. at 349–551.

In considering the first part of the test, the Court determined "there is nothing in the text or legislative history of Chapter 212 to explicitly or implicitly suggest retroactive application"; "[n]or is Chapter 212 ameliorative or curative" because "it does not clarify existing law" but "adds substantive rights including new causes of action, defenses, and damages to the WPL and WHL, and extends the statute of limitations for WHL claims"; and there is nothing to "suggest that the parties had any clear or reasonable expectation that

Chapter 212 would apply retroactively." Id. at 351-52. Because the first part of the test does not support retroactivity, the Court did not address the second part of the test regarding unconstitutional interference with vested rights or manifest injustice. Id. at 352 (citations omitted).

Based on Maia's reasoning, we agree with the motion court that the Allen Act should be applied prospectively and not retroactively. The Allen Act states it "shall take effect on July 1, 2018." L. 2018, c. 9. This is akin to Chapter 212's provision that it takes "effect immediately" on August 6, 2019, which the Maia Court interpreted to apply Chapter 212 prospectively. See 257 N.J. at 337, 351. We find no support for Affrunti's assertion that the Allen Act's legislative history "is replete with evidence" that it should be applied retroactively. Affrunti points to legislative comments hailing the importance of the six-year lookback provision but does not cite to any explicit remark or example that the statute would be retroactive as of the stated effective date. Moreover, there is no indication the Legislature intended the statute to be retroactive because "it [was] necessary 'to make the statute workable or to give it the most sensible interpretation.'" Maia, 257 N.J. at 350-51 (quoting Gibbons v. Gibbons, 86 N.J. 515, 522 (1981)). The Legislature believed enlarging the LAD and WPA's two- year lookback period to six years was

13

sound public policy to eradicate discrimination. Assemb. Appropriations Comm. Statement to A. 1 (Mar. 22, 2018).

The Allen Act's six-year lookback is neither ameliorative nor curative. There is no indication "its purpose is to remedy a perceived imperfection in or misapplication of a statute." Maia, 257 N.J. at 351 (internal quotations and citations omitted). As Chapter 212 was not curative because it added substantive rights, the Allen Act was likewise not curative as it added the substantive right of a six-year lookback period. See id. at 352. There is no indication the Allen Act was meant to clarify any rights previously afforded.

Affrunti fails to show the parties had any clear or reasonable expectation that it would apply retroactively. Her contention that the governor's announcement highlighting the statute's six-year lookback provision to receive back pay, does not establish the public's expectation that the remedy would have retroactive application upon the statute's enactment. At best, her claim is speculative, without any support in the record, and not "strongly apparent" to override the lack of explicit legislative intent. Id. at 351 (quoting James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 573 (2014)).

B.

Given our agreement with the motion court that the Allen Act applies prospectively, the next question is its impact on the extent of Affrunti's back

pay damages and discovery. The court held that because the Allen Act took effect on July 1, 2018, she could not pursue back pay claims arising before that date.[4] It also held that she could not pursue damages after she resigned on January 11, 2019. The court thus limited her discovery demand for comparator employee compensation information from July 1, 2018 to January 11, 2019.

1. Damages

We disagree with the way the court prospectively applied the Allen Act on damages and discovery, as such an application leads to an absurd result. See JWC Fitness, LLC v. Murphy, 469 N.J. Super. 414, 425 (App. Div. 2021) ("We should 'not adopt an interpretation of the statutory language that leads to an absurd result or one that is distinctly at odds with the public-policy objectives of a statutory scheme.'") (quoting State v. Morrison, 227 N.J. 295, 308 (2016)).

The court's ruling divests Affrunti of the two-year lookback period that existed under the LAD before the enactment of the Allen Act. As noted, before the Allen Act, LAD claims were subject to a two-year statute of

---

[4] Affrunti asserts both a claim under the Allen Act for unequal pay for substantially similar work, N.J.S.A. 10:5-12(t), and a gender discrimination in compensation claim under the LAD, N.J.S.A. 10:5-12(a). The court in its order addresses only the N.J.S.A. 10:5-12(t) claim under the Allen Act, but the six-year lookback provision applies to both claims.

limitations. <u>Montells v. Haynes</u>, 133 N.J. 282, 292–93 (1993). Also prior to the Allen Act, it was well established that under the LAD, "each discriminatory paycheck has been treated as the equivalent of a 'discrete' and separable violation of the LAD, so long as the wage remains tainted by the original act of discriminatory intent. To those discrete, serial, and actionable wrongs under the LAD, we apply a two-year statute of limitations." <u>Alexander</u>, 204 N.J. at 234. Thus, so long as the final "discrete" act took place no more than two years prior to the filing of the complaint, a plaintiff's complaint was timely, and they could collect back pay for up to two years prior to the filing of the complaint. <u>See</u> <u>id.</u> at 234–35 (holding the plaintiffs who filed an unequal pay action in 2007 were not barred by the statute of limitations and could collect two years of back pay, even though the initial discriminatory act occurred from 2004-2005, because the plaintiffs continued receiving payments "tainted" by the original discriminatory decision).

Consequently, Affrunti's damage claims should not be limited to the effective date of the Allen Act any more than they were before the statute's enactment. As she correctly points out, she should be allowed to pursue claims related to the payments she received on January 25, 2019 and March 26, 2019—discrete acts of discrimination under the LAD. More importantly, the court's limiting of damages to the effective date of the Allen Act could lead

16                                                                                    A-2477-24

to a result that is contrary to the Legislature's clearly expressed intent to broaden the LAD so that victims of discrimination could collect more damages.  See Alexander, 204 N.J. at 234.

We therefore conclude that with the filing of her complaint on December 18, 2020, the two-year lookback period available to Affrunti to pursue back pay extends to that date, not July 1, 2018—the Allen Act's effective date.  Of course, any claims of continuing violations, which are not part of this appeal, may expand her claim.

2. Discovery

Given our prospective application of the Allen Act, discovery of comparator employee compensation information should not be confined to July 1, 2018 through January 11, 2019.  For the reasons we concluded Affrunti's damages should not be limited to this same period, discovery of comparator employee compensation information should be allowed between December 18, 2018 and December 18, 2020.  Claims of continuing violations which are not the subject of this appeal may possibly expand the discovery period.

IV.

We next address Affrunti's contention that the motion court erred in barring her from compelling the production of comparator discovery for the total compensation of all FSPs throughout the United States from:  (1) July 1,

17

2018, the Allen Act's effective date, to January 11, 2019, the date she resigned; and (2) January 1, 2006, the approximate date Reed Smith promoted her to FSP, to January 11, 2019. She argues she is entitled to this information because Reed Smith is a single-entity employer without subsidiaries and has a New Jersey office staffed with employees, including FSPs who "work together across the [f]irm to build national practices, and [are] considered collectively before [the firm's single] Compensation Committee setting annual compensation and bonuses." She also contends the motion court mistakenly relied on the 2024 <u>Guidance on the Diane B. Allen Equal Pay Act</u>[5] published by the Attorney General's Office and the Division on Civil Rights, addressing out-of-state remote workers, which is not an issue here. The court, according to Affrunti, should have instead referenced the relevant <u>Guidance on the Diane B. Allen Equal Pay Act</u>, 5-8 (2020) (quoting N.J.S.A. 10:5-12(t)),[6] which reads: "[N.J.S.A. 10:5-12(t) of the Allen Act], states that '[c]omparisons of wage rates shall be based on wage rates in all of the employer's operations or

___

[5] Off. of the Att'y Gen. & Div. on C.R., <u>Guidance on Discrimination and Out-of-State Remote Workers,</u> 3 (2024), 2024-05-07-DCR-Guidance-on-Remote-Work.pdf [hereinafter 2024 Guidance].

[6] Off. of the Att'y Gen. & Div. on C.R., <u>Guidance on the Diane B. Allen Equal Pay Act</u>, 5–8 (2020), DCR-Equal-Pay-Guidance-3.2.20.pdf [hereinafter 2020 Guidance].

facilities.'  So an employee is not precluded from filing a claim under the [Allen Act] even if all of her comparators are located outside the State of New Jersey."  The 2020 Guidance recognizes that geography impacts compensation, stating:  "[A]n employer may defend differences in compensation for employees in different geographic locations by showing that those differences are based on differences in cost-of-living or in relevant labor markets in those areas and are not the result of discrimination."

A.

The Allen Act states it is unlawful:

> For an employer to pay any of its employees who is a member of a protected class at a rate of compensation . . . which is less than the rate paid by the employer to employees who are not members of the protected class for substantially similar work.
>
> . . . .
>
> Comparisons of wage rates shall be based on wage rates in all of an employer's operations or facilities.
>
> [N.J.S.A. 10:5-12(t).]

Reed Smith clearly falls within the statute's definition of "Employer" which includes "all persons as defined in . . . [N.J.S.A. 10:5-5(a)] and includes the State, any political or civil subdivision thereof, and all public officers, agencies, boards, or bodies."  N.J.S.A. 10:5-5(e).  N.J.S.A. 10:5-5(a) defines "person[s]" as "one or more individuals, partnerships, associations,

A-2477-24

organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries." N.J.S.A. 10:5-5(a) (emphasis added).

In overlooking these statutory definitions, the motion court erred in deciding that the Allen Act does not extend to employers who have offices in New Jersey but are headquartered or incorporated out of state and have employees throughout the country.

The court's reliance on Calabotta is misplaced. There, the crux of the LAD claim involved a choice-of-law issue—Illinois or New Jersey law—based on the plaintiff, an Illinois resident working for an Illinois subsidiary of the defendant parent company headquartered in New Jersey. Calabotta, 460 N.J. Super. at 46. Considering the six choice-of-law factors taken from the Restatement (Second) of Conflict of Laws (Am. Law Inst. 1971), we concluded New Jersey had the most significant relationship to the claim and thus applied New Jersey law. Id. at 44–45. In citing Calabotta, the court misinterpreted our decision, stating we held "'[the] LAD protects litigants who work or reside out-of-state, so long as the [discriminating act] is made or centered in New Jersey[,]' or if it is the expectation of the parties that New Jersey law will apply." We neither stated nor implied any such categorical rule. Calabotta does not stand for the principle that the LAD only applies to

A-2477-24

employers incorporated or headquartered in New Jersey. There, the choice-of-law determination was not a discovery issue. Moreover, Calabotta's distinction is more telling considering that the plaintiff lived in Illinois and worked remotely for an Illinois subsidiary of a company headquartered in New Jersey, whereas here, Affrunti worked in New Jersey. See 460 N.J. Super. at 46-47.

We agree with Affrunti's contention that the 2024 Guidance does not support the court's holding that production of comparator discovery for the total compensation of all FSPs throughout the United States is not discoverable. She rightly points to the 2020 Guidance that "an employee is not precluded from filing a claim under the [Allen Act] even if all of her comparators are located outside the State of New Jersey." 2020 Guidance at 8. Given that we owe "substantial deference to the interpretation of the agency charged with enforcing [a statute]," Merin v. Maglaki, 126 N.J. 430, 436–37 (1992), we find the Attorney General and the Division of Civil Rights' position persuasive. Legislative history further shows that limiting comparator data to an employer's operations or facilities that are in the same geographic region was rejected.[7]

---

[7] Hearing Before the S. Lab. Comm., at 55:00 to 56:00 (Mar. 5, 2018), https://www.njleg.state.nj.us/archived-media/2018/SLA-meeting-list.

Moreover, there is no definitive statement that the LAD does not apply to employers who are headquartered or incorporated outside our state. In fact, our Supreme Court has applied New Jersey law to a defendant who operates facilities in our state despite being incorporated or headquartered out of state. For example, Wal-Mart was not headquartered or incorporated in New Jersey, yet our Supreme Court allowed WHL and LAD claims to proceed against it without considering whether Wal-Mart was "based" in New Jersey. See Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 95–96 (2007) (remanding for entry of an order certifying the class where plaintiffs claimed that Wal-Mart had violated overtime laws under the WHL); Wilson, 158 N.J. at 265-66, 274 (1999) (remanding plaintiff's age and sex discrimination claim under the LAD to the Law Division for further proceedings).

Contrary to the court's reasoning that Affrunti was seeking comparator FSP data from out-of-state employees working for out-of-state employers, she is seeking compensation data from Reed Smith, a single employer, regarding FSPs at the firm. As an employer within the definition of the LAD, Reed Smith is subject to the Allen Act's' provision requiring that the "[c]omparison of wage rates . . . be based on wage rates in all of an employer's operations or facilities." N.J.S.A. 10:5-12(t) (emphasis added). The purpose of Affrunti's discovery demand is to determine whether under the Allen Act, LAD, and

22

WPA she was discriminated in her compensation based on her gender. There is no indication in the Allen Act that prevents Affrunti from obtaining the FSP data for FSPs who worked in Reed Smith offices throughout the country.

Lastly, we briefly address the motion court's order denying Affrunti's cross-motion to obtain comparator FSP data throughout the United States from January 1, 2006 to January 11, 2019. Given our conclusion that the Allen Act's text, legislative history, and relevant agency interpretations support a broad discovery of the statute's comparator employee compensation data provision, we find that the motion court erred in denying her discovery for this period. Affrunti is entitled to comparator employee compensation data from January 1, 2006 to January 11, 2019. The discovery's admissibility is not before us.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-2477-24